631 So.2d 467 (1994)
Allen H.A. BEGNAUD
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Linda Easley, and GEICO.
Linda Page EASLEY
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT (OFFICE OF HIGHWAYS).
Nos. 93-CA-639, 93-CA-640.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 1994.
Writ Denied March 25, 1994.
*468 Blake G. Arata, Jr., Benjamin B. Daunders, C. Perrin Rome, III, Metairie, for plaintiff-appelleeAllen H.A. Begnaud.
Robert R. Faucheux, Jr., Marie Antoinette Joiner, Law Offices of Robert R. Faucheux, Jr., a Professional Law Corp., LaPlace, for plaintiff-appellee, Linda Easley.
Richard P. Ieyoub, Atty. Gen., Owen Murrah Goudelocke, Sp. Asst. Atty. Gen., Baton Rouge, for defendant-appellantDept. of Transp. and Development.
Before GAUDIN and CANNELLA, JJ., and BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
Allen Begnaud filed suit against the State of Louisiana, Department of Transportation and Development (DOTD), Linda Easley, and Government Employees Insurance Company (GEICO) for damages sustained by him in a single vehicle automobile accident on June 15, 1986. Linda Easley filed suit against DOTD for her injuries sustained in the same accident. These suits were consolidated by the trial court. On its motion for summary judgment, all claims and demands against GEICO were dismissed.
By stipulation of the remaining parties, the issues of liability and quantum were bifurcated for trial. After the trial on liability, the trial court awarded judgment in favor of Begnaud and against Easley and DOTD, in solido, and allocated 65% fault to Easley and *469 35% fault to DOTD. The trial court also granted judgment in favor of Easley and against DOTD, with fault allocated 65% to Easley and 35% to DOTD. DOTD appeals both judgments.
In her brief to this Court, Easley argues that the trial court erred in finding that the surface of the roadway did not contribute to her leaving the roadway and in finding her 65% at fault. These assignments of error seek to modify, revise or reverse the trial court's judgment. However, Easley did not appeal the judgments rendered and has failed to answer DOTD's appeal. Therefore, these assignments of error are not properly before us and need not be considered. A judgment cannot be changed in favor of an appellee who has neither appealed nor answered the appeal of another party. Upon our review of the record, as more fully explained below, we cannot say that these findings were clearly wrong.
The accident occurred at approximately 3:55 A.M. on June 15, 1986 on Louisiana Highway 48 in St. Charles Parish. Louisiana Highway 48 is a two-lane highway originally constructed in the 1920's. At the time of the accident a road hazard sign "Drive CarefullySubstandard Roadway" had been placed along the roadway by DOTD.
Easley was driving a 1974 Chevrolet and Begnaud was a guest passenger in said vehicle. At a certain point along the highway, the right tires of the vehicle left the paved portion of Louisiana 48. As Easley attempted to regain the paved portion of the highway, the vehicle struck deep ruts and dropoffs adjacent to the edge of the highway. The vehicle continued to drift to the right and into a ditch where the right front tire struck a water meter box causing damage to the rim of the tire. Easley could not control the vehicle and the vehicle struck a large oak tree located approximately five feet from the roadway, causing extensive damage to the vehicle and injuries to the occupants.
The DOTD owes a duty to travelers to keep the highways and their shoulders in a reasonably safe condition. Myers v. State Farm Mutual Auto. Ins. Co., 493 So.2d 1170 (La.1986). Whether DOTD breached this duty depends upon the particular facts and circumstances of each case.
DOTD argues that the trial court incorrectly applied the holdings of Myers, supra, and Dill v. DOTD, 545 So.2d 994 (La. 1989) to the facts in this case. In its brief, DOTD states that the trial court correctly cited Myers, supra, and Dill, supra, for the proposition that the failure of DOTD to reconstruct an old highway to meet modern standards does not in and of itself establish the existence of a hazardous defect. The trial court, in its reasons for judgment, correctly pointed out that the holding in Myers, supra, did not relieve DOTD from its duty to keep the highways and shoulders in a reasonably safe condition. In Dill, supra, the Supreme Court of Louisiana clarified the holding by stating that Myers does not stand for the proposition advanced by DOTD that it can escape liability simply by showing that a highway met the existing standards when it was built. As correctly pointed out by the trial court in its reasons, the liability of DOTD is determined on the basis of whether the condition of the highway constituted an unreasonable risk of injury which caused the accident. The trial court then proceeded to consider the condition of the roadway, the shoulder of the roadway, and other facts, to determine whether an unreasonable risk of harm existed which caused this accident. As pointed out by Dill, supra, design standards at the time of original construction and at the time of the accident may be relevant factors in deciding this issue, but are not determinative of the issue.
The road surface of Louisiana Highway 48 was in poor condition. The roadway was constructed in the 1920's and overlaid with reconditioned asphalt in 1977. Mr. Ernest Sanchez, the highway maintenance superintendent, testified that DOTD experienced many maintenance problems with the roadway in the area of the accident. Recommendations by Sanchez to resurface the roadway and to remove the large oak trees adjacent to the roadway were not followed. The trial court found that the roadway presented an unreasonable risk of injury. We cannot say that this finding is clearly wrong. Nevertheless, the trial court found that the *470 condition of the roadway did not cause Easley to leave the roadway. Therefore, we must examine the factors which led the trial court to determine DOTD's fault.
DOTD argues that the trial court erred in finding that the absence of an adequate shoulder and the slope of the adjoining ditch deprived Easley of the ability to regain control of her car and to return to the highway.
DOTD has a duty to keep the shoulders of its highways in a reasonably safe condition. LeBlanc v. State, 419 So.2d 853 (La.1982); Myers v. State Farm Mutual Auto Ins. Co., supra. This duty encompasses the foreseeable risk that, for any number of reasons including simple inadvertence, a motorist might find himself travelling on, or partially on the shoulder. A motorist has the right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979); LeBlanc v. State, 419 So.2d 853 (La.1982). Again, the proper inquiry is whether or not, as a factual matter, the absence of a shoulder, or the presence of an inadequate shoulder, creates an unreasonable risk of harm. Myers, supra.
In this case, the trial judge found that the condition of the shoulder and adjoining ditch presented an unreasonable risk of injury to a motorist who inadvertently drove off the roadway. The 1977 plans in connection with the overlay of LA 48 provided for a shoulder area of two feet.
Joseph Andre, plaintiff's expert in traffic engineering and accident reconstruction, viewed the scene of the accident in July, 1986. He testified that there were severe drop-offs and ruts in the shoulder of the roadway at the point the Easley vehicle left the roadway. He concluded that the shoulder was not useable to allow Easley to regain control and to re-enter the roadway safely. He testified that the condition of the shoulder indicated a lack of maintenance.
Dwayne Evans, plaintiff's expert in traffic engineering and accident reconstruction, also testified that the deterioration of the shoulder caused an excessive slope, or drop-off, which in his opinion was due to improper or inadequate maintenance. In his opinion, the deteriorated condition of the shoulder was a causative factor in the accident and this condition was due to a failure to maintain the shoulder in a reasonably safe manner.
Linda Easley was an experienced driver. Previous to the accident, she had worked as a truck driver and delivery person. She testified that she was familiar with LA 48 and that when her vehicle left the roadway, which she attributed to a hole in the road, she attempted to regain the roadway but could not control her vehicle due to the bumps in the shoulder and the ruts in the adjoining ditch.
Robert Hillburn, plaintiff's expert in accident investigations, examined the accident scene on July 24, 1986. He measured various depths along the shoulder and the ditch and took photographs showing the difference between the level of the roadway and the level of the area immediately adjacent to the roadway. These drop-offs measured as much as seven inches in some areas.
Ernest Sanchez, the highway maintenance superintendent, testified that his responsibilities included inspection of the roadway, the shoulders, and the adjoining ditches. He testified that a shoulder drop-off which exceeds five inches is considered by the highway department to be a hazard which should be repaired immediately. He indicated that there was no regular schedule used in inspecting the roads in St. Charles Parish. He testified that his supervisor was aware of the fact that portions of LA 48 did not have shoulders and were immediately adjacent to the ditch which existed along the roadway at the point of the accident. He further testified that the DOTD would not be concerned with attempting to obtain a level surface between the ditch and the paved portion of the road.
DOTD's expert, Ned Walton, testified that the lack of maintenance on the shoulders of LA 48 did not have anything to do with the accident. His opinion that the accident was caused solely by driver fault, was based on his opinion that the Easley vehicle left the *471 roadway at a point only twenty-one feet from the oak tree. Easley testified that her vehicle did not leave the paved portion of the highway twenty-one feet from the tree.
An implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). The testimony offered by the plaintiffs and DOTD obviously did not agree as to the point at which the Easley vehicle left the roadway. The trial court obviously concluded that the plaintiffs' version of the accident was correct and rejected the opinion offered by DOTD's expert. The trial court found that the shoulder and ditch presented an unreasonable risk of injury to Easley and the passenger in her vehicle. Upon our review of the record, we cannot say that the trial court was clearly wrong in this finding.
DOTD also complains about the trial court's finding that the oak tree which the Easley vehicle struck presented a hazard to motorists travelling on LA 48. The oak tree was located within five feet of the roadway and DOTD was aware of this hazardous condition and failed to take corrective action, despite Sanchez's request to remove this tree and other oak trees similarly situated.
DOTD argues that the trial court should have concluded that Easley was solely at fault in the accident. A motorist's duty of reasonable care includes the duty to keep his vehicle under control. Sinitiere v. Lavergne, supra. The trial court found that the condition of the roadway did not cause Easley to leave the roadway. Therefore, the trial court found Easley's failure to travel on the roadway contributed to the accident and assessed Easley with 65% fault. The trial court found that DOTD's failure to provide a safe shoulder and adjacent area for Easley to recover and regain the roadway was a contributing factor in causing the accident and assessed DOTD with 35% fault. Considering the entire record, we cannot say that these findings are clearly wrong.
Accordingly, we affirm the trial court's judgment. Appellant to bear the cost of the appeal.
AFFIRMED.