947 So.2d 205 (2007)
FIRST BANK AND TRUST
v.
N & S SPECIALTIES, INC., Jude A. Orgeron & Sidney J. Stallings, III.
No. 06-CA-618.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 2007.
Rehearing Denied February 13, 2007.
*206 Wayne A. Maiorana, Jr., Newman, Mathis, Brady & Spedale, Attorney at Law, Metairie, Louisiana, for Plaintiff/Appellant.
Leo D. Congeni, Leo D. Congeni & Associates, New Orleans, Louisiana.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS and FREDERICKA HOMBERG WICKER.
McMANUS, Judge.

STATEMENT OF THE FACTS
On September 27, 2000, a promissory note was executed between N & S Specialities ("N & S"), through its agents Jude Orgeron ("Orgeron") and Sidney Stallings ("Stallings"), and First Bank and Trust ("First Bank") for $25,000.00. Also on September 27, 2000, Orgeron signed a Commercial Guaranty agreeing to pay the loan if N & S defaulted.
On August 14, 2002, Stallings, on behalf of N & S, executed a Disbursement Request and Authorization in the amount of $24,847.39, to allegedly pay the first loan and create another debt. Also on August 14, 2002, Stallings executed a Continuing Guaranty agreeing to be liable for the debt of N & S owed to First Bank.
The loan payments were not timely paid by N & S and First Bank filed suit in the Twenty-fourth Judicial District Court on August 4, 2004, alleging the promissory note was in default and due in full. N & S, Orgeron and Stallings were named as defendants. N & S and Stallings failed to answer the Petition, therefore, First Bank filed a Motion for Preliminary Default on September 23, 2004. First Bank obtained a judgment against N & S and Stallings on October 1, 2004. Stallings filed Chapter 13 bankruptcy on October 20, 2004, which was converted to Chapter 7 on October 17, 2005. First Bank then pursued its claim against Orgeron. Orgeron filed an Answer and Exceptions on November 5, 2004. On January 4, 2005, First Bank filed a motion for summary judgment. First Bank argued the Guaranty signed by Orgeron was continuing because the language of the instrument stated cancellation must be written. First Bank asserted that Orgeron had not submitted written cancellation.
Orgeron also filed a cross motion for summary judgment on February 2, 2005. Orgeron argued that Stallings had bought his interest in N & S and the reason for Stallings' Guaranty was to cancel any liability on the part of Orgeron because the second loan was made novating the first loan. Orgeron argued he was an unsophisticated business man and believed all liability had ended at this point. Orgeron further argued he orally terminated his guaranty and First Bank cannot rely on the clause requiring the written cancellation because the clause is "unspecified".
A hearing on both motions was held July 7, 2006. The trial court rendered judgment orally on July 7, 2006 granting Orgeron's *207 cross motion for summary judgment and denying First Bank's motion for summary judgment, finding that the original note was cancelled and was no longer in effect. The trial court signed a written judgment to that effect on July 11, 2006.
First Bank now appeals the trial court's judgment arguing four assignments of error: 1) the trial court erred by ruling that a second loan agreement was entered into because there is no evidence to support that claim and a genuine issue of material fact exists as to the existence of said loan, 2) the trial court erred in granting Orgeron's motion for summary judgment because a renewal of a previous loan is not a novation of the promissory note and there was no evidence showing the clear intent of the parties, 3) the trial court erred by ruling that Sidney Stallings, III personally took out a second loan when the Disbursement Request clearly states the borrower was N & S, and 4) the trial court erred in ruling that Orgeron's continuing guaranty was cancelled, even though the Commercial Guaranty signed by Orgeron clearly required one for termination of the contract.
For the reasons which follow, we reverse the trial court's judgment granting Orgeron's motion for summary judgment and affirm the trial court's judgment denying First Bank's motion for summary judgment. We remand this matter to the trial court for further proceedings.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Hyman v. East Jefferson General Hospital, 04-1222 (La.App. 5 Cir. 3/1/05) 900 So.2d 124, 125-6. An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law. Id. The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case. Id. There must be a "genuine" or "triable" issue on which reasonable persons could disagree. Id. Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." Id. A material fact is one that would matter on the trial of the merits. Id.
We find there are genuine issues of material fact that preclude the granting of summary judgment in favor of Orgeron. The trial court found that the original note was cancelled and no longer in effect, and granted summary judgment in favor of Orgeron, finding he was not liable under the guaranty. We find there is an issue of fact regarding whether or not the Disbursement Request submitted to First Bank by Stallings was a second loan, which was separate from the original loan by N & S in 2000. The original loan by N & S on September 27, 2000 was set up as a line of credit for $25,000. At that time, Orgeron and Stallings were both owners of N & S and Orgeron executed the personal guaranty. Then in 2002 Stallings executed the Disbursement Request and Authorization stating that it was "to pay off loan # XXXXXXXXX and term out." However, we specifically note that the loan number on the second loan is the same as the original loan number. Based on the evidence presented with the motions for summary judgment, we find there is an issue of fact as to whether or not the disbursement request by Stallings represented a new, second loan, which would novate the original *208 loan by N & S. We find the trial court incorrectly concluded that there was a second loan and incorrectly granted summary judgment in favor of Orgeron.
We also find there is an issue of fact as to whether the guaranty by Orgeron had been terminated. The guaranty signed by Orgeron contains the following paragraph:
CANCELLATION OF AGREEMENT; EFFECT. Unless otherwise indicated under such a written cancellation instrument, Lender's agreement to terminate or otherwise cancel this Agreement shall affect only, and shall be expressly limited to, Guarantor's continuing obligations and liability to guarantee Borrower's indebtedness incurred, originated and/or extended (without prior commitment) after the date of such a written cancellation instrument; with Guarantor remaining fully obligated and liable under this Agreement for any and all of Borrower's indebtedness incurred, originated, extended, or committed to prior to the date of such a written cancellation instrument. Nothing under this Agreement or under any other agreement or understanding by and between Guarantor and Lender, shall in any way obligate, or be construed to obligate, Lender to agree to the subsequent termination or cancellation of Guarantor's obligations and liability hereunder; it being fully understood and agreed to by Guarantor that Lender has and intends to continue to rely on Guarantor's assets, income and financial resources in extending credit and other indebtedness to and in favor of Borrower, and that to release Guarantor from Guarantor's continuing obligations and liabilities under this Agreement would so prejudice Lender that Lender may, within its sole and uncontrolled discretion and judgment, refuse to release Guarantor from any of its continuing obligations and liability under this Agreement for any reason whatsoever as long as any of Borrower's Indebtedness remains unpaid and outstanding, or otherwise.
It appears that Orgeron did not cancel the guaranty in writing, as required by the document he signed. Orgeron claims he orally notified Chris Benoit, an officer of First Bank, that he was terminating and revoking his guaranty. However, as stated above, the Guaranty required that the cancellation be by a "written cancellation instrument". Orgeron has not provided evidence of a "written cancellation instrument." Therefore, a genuine issue of fact exists as to whether or not Orgeron cancelled the Guaranty or it was still in effect at the time of the default on the loan.
The existence of these issues of fact preclude the granting of summary judgment in favor of Orgeron. Accordingly, we reverse the trial court's judgment granting Orgeron's motion for summary judgment, affirm the trial court's judgment denying First Bank's motion for summary judgment, and remand this matter to the trial court for further proceedings.
REVERSED AND REMANDED.