LILJEBERG, J.
Plaintiff, Marilyn Faucheaux Tarto, as duly appointed curator of Dustin Michael Schexnayder, Sr., appeals the summary judgment granted in favor of defendants, St. Charles Parish and Vernon Joseph “V.J.” St. Pierre, Jr., in his capacity as St. Charles Parish President, which dismissed all of plaintiffs claims against these defendants with prejudice. Plaintiff also appeals the denial of her motion to annul judgment and for new trial, as well as the denial of a motion to recuse the trial judge. For the following reasons, we affirm the trial court’s judgments.
FACTS AND PROCEDURAL HISTORY
This matter involves a single car motor vehicle accident. On the morning of February 14, 2011, Dustin Schexnayder, Sr. was driving to work in his 1996 Ford Bronco on the Bonnet Carre Spillway Road located in St. Charles Parish (“Spillway Road”). Mr. Schexnayder was heading westbound on Spillway Road from Norco to Montz. According to the investigating officer, Corporal Thomas Mayville, Mr. Schexnayder’s vehicle gradually veered off Spillway Road and traveled approximately 126 feet in a straight line through a grassy area next to the road.[1] When the vehicle reached the edge of the drainage canal, it went airborne and the front end of the vehicle struck the rock embankment on the other side of the canal. Mr. Schexnayder was not wearing a seatbelt and suffered severe injuries as a result of the impact. Mr. Schex-nayder does not recall how the accident occurred and there were no eyewitnesses. Following the accident, Mr. Schexnayder *579 was declared mentally incompetent and plaintiff is his appointed curator.
Corporal Mayville explained that he determined the path Mr. Schexnayder’s vehicle travelled by measuring a set of tire tracks he saw in the wet grass that led in a straight line all the way from the road to the edgé of the canal embankment. He used a roller wheel to measure 126 feet from the point where he saw the right front passenger tire track start in the grassy area next to the road to the point where the vehicle encountered the rocks on the edge of the drainage canal embankment.[2] Corporal Mayville did not detect evidence of any attempt by Mr. Schexnay-der to brake or to return the vehicle to Spillway Road prior to reaching the drainage canal. Corporal Mayville stated that based on his experience, he believed Mr. Schexnayder fell asleep and ran off the road.
Plaintiff questions the validity of Corporal Mayville’s findings because other vehicles drove into the grassy area next to the drainage ditch. Plaintiff also claims that Corporal Mayville testified that no witnesses were at the scene when he arrived and that this deposition testimony is contradicted by Earl Allert, a motorist who claims he was first to arrive at the scene and call 911. However, Corporal Mayville actually testified that he could not recall who was at the scene when he arrived. Furthermore, while Mr. Allert stated in his affidavit that he drove up behind Mr. Schexnayder’s vehicle when he arrived at the scene, he also clarified in his deposition that his vehicle was 20 to 30 feet from Mr. Schexnayder’s vehicle. Plaintiff did not present evidence to establish that Mr. Al-lert’s vehicle or any vehicle other than Mr. Schexnayder’s vehicle drove in a straight line for 126 feet from Spillway Road to the edge of the embankment.
Corporal Mayville also estimated that the vehicle was travelling at approximately 51 miles per hour (“mph”) at the time of the accident. Plaintiffs expert, Dean Te-kell, estimated the vehicle was travelling at or slightly above 35 amph at the time of the accident and defendants’ expert, Michael Gillen, estimated the speed at 54 mph. The speed limit on Spillway Road is 25 mph. In addition, it is undisputed that it was foggy at the time of the accident.
The United States owns the land in the Bonne Carre Spillway as part of a flood control project. In the 1960s, the United States, through the U.S. Army Corps of Engineers (“USCOE”), granted St. Charles Parish a license to “improve, operate and maintain” Spillway Road through its property. Spillway Road is a two'lane, asphalt road which is 21 feet wide and joins the towns of Norco and Montz. The road crosses several culverts which were constructed to allow water to flow under the road in drainage canals from the spillway dam to Lake Pontchartrain.
In 2008, the USCOE opened the spillway and Spillway Road suffered severe damage. As part of the process to repair the road, the USCOE decided to replace the existing culverts with larger ones to allow more water to flow under Spillway Road. The USCOE purchased the culverts and the Parish was responsible for their installation, as well as repaving the road.
Following the accident, Ms. Tarto filed suit in state court against St. Charles Parish, Mr. St. Pierre, in his capacity as Parish President, the St. Charles Parish Council, the State of Louisiana, the US-COE and later the United States of America.[3] Plaintiff seeks to recover damages *580 from the Parish and Mr. St. Pierre based on her claim that the culvert crossing on Spillway Road is defective due to the absence of adequate shoulders and guardrails. She further contends that if the Parish had installed a guardrail at the culvert crossing, Mr. Schexnayder’s vehicle would have encountered the guardrail when he veered off Spillway Road and his injuries would have been less severe.
On April 1, 2015, defendants filed a motion for summary judgment seeking dismissal of plaintiffs claims against them. Defendants argued summary judgment was warranted because plaintiff failed to produce any evidence of a known defect in Spillway Road, which caused Mr. Schex-nayder’s injuries or caused Mr. Schexnay-der’s vehicle to veer off the road. Defendants further argued that the Parish did not have custody of the drainage ditch or the land adjacent to Spillway Road where the accident occurred. Finally, defendants argued that the alleged lack of guardrails at the culvert crossing was not a cause of Mr. Schexnayder’s accident since his vehicle left Spillway Road approximately 126 feet prior to the culvert crossing.
In her opposition, plaintiff argued Spillway Road was defective because it lacked a shoulder over the culvert and had no guardrails to prevent motorists from entering the culvert. Plaintiff argued the Parish should have installed the guardrails when it rebuilt the culvert crossings in 2008. Plaintiff cited to the report prepared by her expert, Dean Tekell, in which he stated that even if Mr. Schexnayder’s vehicle veered off the road at a point 126 feet prior to the culvert crossing, the vehicle would have struck the guardrail reducing the severity of the crash. Therefore, plaintiff argued the absence of a guardrail was a defect on Spillway Road that caused Mr. Schexnayder’s injuries. Plaintiff also argued the Parish was aware of the need for guardrails based on a series of emails between Parish. employees regarding a request from the USCOE to install guardrails at the culvert crossings in 2008. The Parish did not install guardrails and instead installed chevron signs to warn motorists of the drainage canals at the culvert crossings.
Following a hearing on May 7, 2015, the trial court took defendants’ motion for summary judgment under advisement. On May 8, 2015, the trial court issued a judgment granting the motion and dismissing plaintiffs claims against them. The trial court noted in its judgment that Mr. Schexnayder’s vehicle left the roadway 126 feet prior to the culvert crossing, and that “[n]one of the roadway safety implements advanced by plaintiff and [her] experts within the area licensed to Defendants would have prevented or otherwise diminished Mr. Schexnayder’s injuries.”[4]
Plaintiff then filed a motion to annul judgment and for new,trial on May 18, 2015, as well as. a motion to recuse Judge Timothy S. Marcel based on his alleged representation of the Parish in unrelated matters prior to his. election to the bench. On May 19, 2015, Judge Marcel issued an order to reallot the case for a hearing on the motion to recuse. The motion to recuse was heard by Judge M. Lauren Lemmon and dismissed as untimely on August 20, 2015. On November 19, 2015, Judge Mar *581 cel denied plaintiffs motion to annul judgment and for new trial.
Plaintiff filed a petition and order for appeal on December 1, 2015, and an amended petition and order for appeal on December 2, 2015. Judge Marcel signed the order of appeal on December 10, 2015.
LAW AND DISCUSSION
On appeal, plaintiff raises several assignments of error and issues for review with respect to the trial court’s decision to grant defendants’ summary judgment motion. Upon review of plaintiffs briefing of these assignments and issues, it is apparent the only issues before this Court with respect to the summary judgment motion are whether the trial court erred in failing to find that genuine issues of material fact exist as to whether .the .culvert crossing was defective due to the absence of a guardrail and whether the guardrail would have prevented or otherwise diminished Mr. Schexnayder’s injuries.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La. 1991); Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, 'admissions on file, and any affidavits show that there is no genuine issue of material fact, and that' the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).[5] The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966(C)(2). If the adverse party fails to produce factual support sufficient to show that she will be able to meet her evidentiary burden of -proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Hyman v. East Jefferson General Hosp., 04-1222 (La.App. 5 Cir. 3/01/05), 900 So.2d 124, 126.
In determining whether a genuine issue of material fact exists, we must consider the substantive law governing the litigation, which in this case includes La. C.C. arts. 2315, 2317 and 2317.1, as well as La. R.S. 9:2800. La. C.C. art. 2317.1 provides, in pertinent part, as follows:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
La. R.S. 9:2800 limits the liability of a public body and provides in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody,
[[Image here]]
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of *582 things within its care and custody unless the public entity had actual or constructive notice of the-particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect’and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.
The legal analysis for a claim against a public entity for and injury resulting from an alleged defective condition is the same whether the cause of action is raised under La. C.C. art. 2317 and La. R.S. 9:2800 for strict liability, or under La. C.C. art. 2315 for negligence. White v. Select Specialty Hosp., 12-611 (La.App. 5 Cir. 3/13/13), 110 So.3d 1254, 1260. Therefore, no matter which theory of recovery a plaintiff ásserts against a public entity, a plaintiff must establish: (1) the [defendant] had custody of the thing that caused- the plaintiffs-injuries; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) the [defendant] had actual or constructive knowledge of the defect and did not take corrective measures within a reasonable time; and (4) the defect in the thing was a causein-fact of the plaintiffs injuries. Bessard v. State, Dept. of Transp. and Development, 94-0589 (La. 11/30/94), 645 So.2d 1134, 1136; Myers v. Acadia Parish Police Jury, 15-976 (La.App. 3 Cir. 4/6/16), 189 So.3d 571, 576. Failure to establish any one of these elements is fatal to a plaintiffs claim.
The framework for evaluating whether a thing is defective and creates an unreasonable risk of harm is propeidy classified as a determination of whether a defendant owed a duty and whether the defendant breached that duty. Broussard v. State, 12-1238 (La. 4/5/13), 113 So.3d 175, 185. The question of whether a duty exists is a question of law. Id.
The Parish has a duty to maintain public roads in a safe condition so as not to expose the public to unreasonable dangers. Ruttley v. Lee, 99-1130 (La.App. 5 Cir. 5/17/00), 761 So.2d 777, 785, writ denied, 00-1781 (La. 9/22/00), 768 So.2d 1287. In Cormier v. Comeaux, 98-2378 (La. 7/7/99), 748 So.2d 1123, 1127, the Louisiana Supreme Court held that the duty to keep a road in a reasonably safe condition encompasses the foreseeable risk that a motorist might find himself traveling on, or partially, on the shoulder. Begnaud v. Department of Transp. & Dev., 93-639 (La.App. 5 Cir. 1/12/94), 631 So.2d 467, 470, writ denied, 94-367 (La. 3/25/94), 635 So.2d 230. This duty extends to drivers who are slightly exceeding the speed limit or momentarily inattentive. Cormier, 748 So.2d at 1127.
However, the Parish is not responsible for all accidents occurring on roads in its custody, nor does it guarantee the safety of persons traveling on the road. Brown v. State Through Dept. of Transp. and Development, 572 So.2d 1058, 1061 (La.App. 5 Cir.1990), writ denied, 581 So.2d 710 (La. 1991). The duty owed by the Parish does not include the obligation to protect a plaintiff against harm that would not have occurred but for the plaintiffs grossly negligent operation of the motor vehicle. Jacques v. State Through Dept. of Transp. and Development, 03-2226 (La. App. 1 Cir. 9/17/04), 905 So.2d 294, 299, writ denied, 04-3013 (La. 2/18/05), 896 So.2d 36.
On appeal, plaintiff argues that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether the lack of the guardrail rendered the road defective and whether this defect caused Mr. Schexnay- *583 der’s injuries. In support of -her argument that the Parish had a duty to install a guardrail, plaintiff relies on the report prepared by her expert, Dean Tekell. However, Mr. Tekell does not state in his report that the Parish had a specific duty to install a guardrail. Rather, he states that the culvert crossings were defective because they lacked adequate clear zones or shoulders of 7 to 16 feet.[6] Mr. Tekell then explains that the Parish could have remedied this problem by "lengthening the culvert, and backfilling behind a culvert head-wall ... or by installing a guardrail....” [Emphasis added]. He further states that the guardrail would extend out 62 feet in advance of the crossing and 7.5 feet from the edge of Spillway Road. .He finally states in a conclusory manner that if the Parish had installed a guardrail, Mr. Schexnayder’s vehicle would more probably than not have encountered the guardrail and reduced the severity of the crash.
It is undisputed that Mr. Schexnayder’s vehicle did not enter the drainage canal from the culvert crossing. While plaintiff’s expert states that he believes Mr. Schex-nayder’s vehicle veered off Spillway Road at a point closer to the culvert crossing than the 126 feet determined by the investigating officer, he does not claim that the vehicle reached the-culvert crossing or entered the drainage canal from the crossing. Therefore, plaintiff presents no evidence to establish that the alleged defective culvert crossing caused Mr. Schexnayder’s vehicle to leave Spillway Road.
The only issue raised by plaintiff is whether a guardrail would have somehow lessened the severity of Mr. Schexnayder’s injuries. However, plaintiffs expert does not cite to any statutes, laws or regulations which required the installation of the guardrail he describes. Furthermore, he does not provide any details or calculations to explain how or where the vehicle would have encountered the guardrail if the vehicle left the road 126 feet prior to the crossing. Most importantly, if the Parish followed Mr. Tekell’s alternate proposal (to lengthen the culvert) prior to the accident, there would not have been a guardrail for Mr. Schexnayder’s vehicle to encounter.[7]
Based on the evidence presented by plaintiff, we find that she failed to meet her burden to prove that the Parish had a duty to install a guardrail extending 62 feet from the crossing and 7.5 feet from the edge of Spillway Road. Plaintiffs own expert recognized that an alternative remedy existed to rectify the alleged lack of an adequate shoulder at the culvert crossing. Therefore, we find that the trial court properly granted summary judgment in favor of defendants and dismissed plaintiffs claims against them with prejudice.[8]
Plaintiff also contends that Judge Lem-mon erred by failing to find that Judge Marcel’s alleged conflicts of interest and his failure to disclose his prior representation of the Parish were grounds for recu-sal. On May 18, 2015, ten days after the trial court entered judgment dismissing *584 plaintiffs ciatos against defendants, plaintiff filed a motion to recuse Judge Marcel based on his prior representation of the Parish in unrelated matters. Judge Marcel entered an order referring the motion to recuse to another division of the court for hearing.
On May 26, 2015, defendants filed a motion to dismiss the motion to recuse as untimely pursuant to La. C.C.P, art. 154, because plaintiff filed the motion after the trial court entered judgment dismissing her claims. On August 20, 2015, Judge Lemon entered a judgment granting defendants’ motion to dismiss the motion to recuse.
La. C.C.P. art. 154 provides as follows: A party desiring to recuse a judge of a district court shall file a written motion thereafter assigning the ground for re-cusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. [Emphasis added.]
Based on the clear and unequivocal language of La. C.C.P. art. 154, we find Judge Lemmon did not err by dismissing the motion to recuse as untimely since plaintiff filed it ten days after the entry of the final judgment dismissing her claims against defendants.
Plaintiff also argues that Judge Marcel erred in failing to grant a new trial on the summary judgment motion based on his alleged failure to disclose his prior representation of the Parish.[9] The trial court’s past representation of a party is not listed as a mandatory or discretionary ground for recusal in La. C.C.P. arts. 151 or 152, respectively. Furthermore, plaintiff failed to demonstrate the existence of any bias or prejudice on the part of Judge Marcel. We find this assignment of error is without merit.
Plaintiff finally contends that the trial court erred by denying her motion to annul judgment and for new trial because she did not receive a copy of defendants’ reply brief until May 12, 2015, after the trial court granted defendants’ summary judgment motion. Even assuming that plaintiff did not receive a timely copy of the reply brief, plaintiffs assignment of error is without merit because she fails to point to any new arguments or evidence presented in defendants’ reply brief which would require the granting of a new trial or nullification of the judgment. A late reply brief alone does not warrant such relief.
DECREE
For these reasons, we affirm the trial court’s judgment granting defendants’ motion for summary judgment and dismissing plaintiffs claims against them with prejudice. We also affirm the trial court’s denial of plaintiffs motion to recuse and motion to annul judgment and for new trial.
AFFIRMED

. According to defendants’ expert, Michael S. Gillen, the departure angle of Mr. Schexnay-der’s vehicle was approximately seven, degrees relative to the roadway.

. It is undisputed that Spillway Road is level to the grassy area next to the road.

. The case was removed twice to federal court where plaintiff ultimately settled her claims *580 against the United States, USCOE and State of Louisiana. The federal court then remanded the remaining claims back to state court.

. In its November 19, 2015 Judgment and Incorporated Reasons on Motion for New Trial and Motion to Annul Judgment, the trial court also noted that "[t]his Court rendered summary judgment finding—as a matter of law—that St. Charles Parish did not have a duty to prevent a risk which led to Plaintiffs’ damages.”

. La. C.C.P. art 966' was amended effective January 1, 2016. The instant motion for summary judgment was filed and decided prior to the effective date of the amendment and we review this matter by applying the article in effect at that time.

. Mr. Tekell notes that Spillway Road had adequate clear zones at all other points except for the culvert crossings.

. According to plaintiff, the Parish rebuilt the culvert crossing by constructing a shoulder over the culverts after the accident at issue in this matter.

. Plaintiff also notes in the first issue for review listed in her appellate brief that Spillway Road was defective due to the lack of "road striping.” However, plaintiff failed to provide any argument or cite to any evidence regarding this alleged defect or how it caused Mr. Schexnayder’s injuries. Plaintiff's claim with respect to the alleged lack of road striping was not briefed on appeal and is therefore deemed abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4).

. Judge Marcel did disclose that he previously represented the plaintiff in a property settlement matter.